**Donna HRIVNAK, Plaintiff,**

v.

**FIRST OF MICHIGAN CORPORATION, a Delaware corporation, Defendant.**

**Civ. A. No. 84CV–07587–AA.**

United States District Court,
E.D. Michigan, S.D.

Sept. 19, 1985.

James L. Elsman, Birmingham, Mich., for plaintiff.

Richard J. Seryak, Michael P. Coakley, Miller, Canfield, Paddock & Stone, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is an employment discrimination case. Plaintiff Donna Hrivnak claims that defendant First of Michigan ("FOM") wrongfully terminated her employment because of her illegitimate pregnancy. Count I of the complaint alleges a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (1982), and the Elliott-Larsen Civil Rights Act, Mich.Comp. Laws Ann. § 37.2101 *et seq.* (West 1985). Count II is a claim that defendant breached an implied agreement with plaintiff that it would not fire her without just cause. Count III alleges that defendant intentionally inflicted emotional distress, in violation of Michigan law.

This case comes before the court on defendant's motion for summary judgment on Counts I and II of the complaint, and to dismiss Count III. At the oral hearing on defendant's motion, both sides agreed that plaintiff has not exhausted, or even pursued, the administrative remedies for her Title VII claim before filing suit in this court. Both parties were directed to file briefs discussing the issue of whether plaintiff's failure to take her Title VII claim to the EEOC divests this court of jurisdiction over that claim. In their briefs, both sides rely on *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The parties argue that *Zipes* holds that the filing of charges with the EEOC is not a prerequisite to federal jurisdiction, but is a requirement that is subject to waiver, estoppel, and equitable tolling. Both sides then agree that defendant has waived any objection that it could have made to the jurisdiction of this court.

The "primary question" addressed in *Zipes* was "whether the *statutory time limit* for filing charges under Title VII . . . is a jurisdictional prerequisite to a suit in the District Court." *Zipes, supra,* 455 U.S.

at 387, 102 S.Ct. at 1129 (emphasis added). Accordingly, the Court examined the relationship between 42 U.S.C. § 2000e–5(f)(3), giving district courts jurisdiction over "actions brought under this subchapter," and 42 U.S.C. § 2000e–5(e), specifying the time limits for filing EEOC charges. The timely filing provision states that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ..." The Court observed that the timely filing provision is completely separate from the jurisdiction provision, and that it does not speak in jurisdictional terms or refer in any way to jurisdiction. 455 U.S. at 394, 102 S.Ct. at 1133. The Court concluded from this examination of the relevant Title VII provisions, as well as from the underlying Congressional policy and its own prior decisions, that the timely filing provision was not a prerequisite to federal court jurisdiction. Instead, the timely filing requirement, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Id.* at 392–98, 102 S.Ct. at 1131–35.

The difference between the present case and *Zipes* is readily apparent. In *Zipes*, the Court held that claims filed with the EEOC outside of the statutory time limit were to be considered "actions brought under this subchapter" that are subject to district court jurisdiction. In the present case, plaintiff has not filed timely, untimely or late charges with the EEOC; she has filed no charges whatsoever with any agency. The parties therefore ask this court to extend *Zipes*, and hold that claims that have not been subjected to agency review are nonetheless "actions brought under this subchapter" that are subject to district court jurisdiction.

Almost all of the cases cited by the parties to support their extension of *Zipes* are irrelevant, for they address claims that had been presented to the EEOC at some point. *See, e.g., Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 620–21 (6th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). One judge has extended *Zipes* as the parties suggest. *See Jones v. Cassens Transp.,* 538 F.Supp. 929, 932 (E.D.Mich.1982), *appeals dismissed,* 705 F.2d 454 (6th Cir. 1983). However, another case suggests that *Zipes* does not confer jurisdiction over Title VII claims that are not exhausted before the appropriate agency. In *Edwards v. Department of the Army,* 708 F.2d 1344 (8th Cir.1983), the court held that it lacked jurisdiction over plaintiff's Title VII claim. The court reasoned that plaintiff failed to exhaust his administrative remedies before the EEOC, because he did not give the EEOC officer the information necessary to process his charge. 708 F.2d at 1347. The court cited *Zipes* in discussing the timeliness of the EEOC charge, but concluded that exhaustion of administrative remedies was a jurisdictional prerequisite. *Id.* at 1346–47. The failure of the plaintiff in the present case to file a charge with the EEOC is analogous to the insufficient filing found in *Edwards.*

The foregoing discussion reveals the paucity of authority on the question of whether the pursuit of administrative remedies is a jurisdictional prerequisite to a Title VII action. It is therefore necessary to examine anew the enforcement provisions of Title VII that are contained in 42 U.S.C. § 2000e–5. The statute sets up elaborate provisions for the processing of discrimination claims by the EEOC, as well as by state and local agencies, before such claims are heard in federal court. The statutory structure for the enforcement of Title VII claims strongly suggests that "actions brought under this subchapter" are those which are first presented to and considered by the EEOC, and other appropriate equal opportunity agencies.

The Supreme Court has discussed the policies and goals prompting Congress to select agency review as the first step in the Title VII enforcement process:

Congress enacted Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800 [93 S.Ct. 1817, 1823, 36 L.Ed.2d 668] (1973); *Griggs v. Duke Power Co.,* 401 U.S. 424,

429–30 [91 S.Ct. 849, 852–53, 28 L.Ed.2d 158] (1971). Cooperation and voluntary compliance were selected as the preferred means for achieving this goal. To this end, Congress created the Equal Employment Opportunity Commission and established a procedure whereby existing state and local equal employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit. In the Equal Employment Opportunity Act of 1972, Pub.L. 92–261, 86 Stat. 103, Congress amended Title VII to provide the Commission with further authority to investigate individual charges of discrimination, to promote voluntary compliance with the requirements of Title VII, and to institute civil actions against employers or unions named in a discrimination charge.

*Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017–18, 39 L.Ed.2d 147 (1974).

In addition to the statutory provisions for initial agency review and the important policies served by those provisions, another factor indicates that a Title VII plaintiff may not present her claim for the first time in federal court. For many years, the Supreme Court has held that district courts should dismiss claims brought by plaintiffs who have ignored a procedure established by Congress that calls for the initial presentation of the claims before an administrative agency. *See, e.g., Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952), where the Court, in the context of considering agency review of claims brought under the Shipping Act of 1916, discussed the "firmly established" principle

> that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.... Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the

limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure. *Far East Conference* and similar cases suggest that the plaintiff in the present case should have presented her claim to the EEOC, giving the agency a chance to resolve the matter through its expertise, flexibility, and experience, before she turned for relief to the federal courts.

Accordingly, this court holds that Title VII plaintiffs must pursue their administrative remedies before filing suit in federal court. Claims that are not first presented to an appropriate administrative agency are not "actions brought under" Title VII, and a district court lacks jurisdiction over them.

The foregoing discussion reveals that this court lacks jurisdiction over plaintiff's Title VII claim, which is her sole federal cause of action. For this reason, the case must be dismissed.

SO ORDERED.