Jeffrey M. BOSWELL, Plaintiff,

v.

DEPARTMENT OF THE TREASURY, OFFICE OF THE COMPTROLLER OF THE CURRENCY, Defendant.

No. CIV.A.3:96–CV–2873–P.

United States District Court, N.D. Texas, Dallas Division.

May 13, 1997.

Nathan Scott Carpenter, Law Office of N. Scott Carpenter, Plano, TX, for Plaintiff.

Stafford Hutchinson, U.S. Attys. Office, Dept. of Justice, Dallas, TX, for Defendant.

### ORDER GRANTING MOTION TO DISMISS

SOLIS, District Judge.

Presently before the Court is Defendant's Motion to Dismiss, filed January 22, 1997. Plaintiff filed his response to Defendant's motion on March 14, and Defendant replied on March 27, 1997. As discussed below, the Court finds that Defendant's motion should be granted.

### BACKGROUND

This is an employment case involving alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff Jeffrey Boswell ("Boswell"), who is employed as Operations Manager with the Southwestern District Office of the Comptroller of the Currency ("OCC") alleges that his supervisor, Thomas Byledbal ("Byledbal"), retaliated against him because of his participation in a 1994 investigation by the Equal Employment Opportunity Commission ("EEOC") that originated in Washington, D.C. and that had been prompted by an EEOC complaint filed by one of Plaintiff's co-workers. Boswell further asserts that, ever since he filed an internal FED charge against Byledbal on May 9.1995 in which he complained of Byledbal's conduct, the latter has continuously subjected him to a hostile working environment.

Boswell's May, 1995 administrative complaint alleged various acts of retaliation committed by Byledbal, some of which date back as far as 1988. According to the complaint, these actions were taken in reprisal for (I) Boswell's handling of performance and conduct issues, (2) his efforts to seek pay comparability; (3) his request for reconsideration of an unfair 1989 performance evaluation; (4) his decision to report information concerning a possible violation of law in 1993; and (5) his support of "EEO principles" in connection with the 1994 Washington EEO investigation. This initial complaint was supplemented on August 8, 1995 by Boswell's second administrative complaint, which alleged that Byledbal was retaliating against him for filing the first complaint.

In a September 1, 1995 final agency decision, the Director of Treasury's Regional Complaint Center dismissed nine of the eleven individual allegations contained in Plaintiff's first administrative complaint pursuant to 29 C.F.R. § 1614.107(b) on the ground that they had not been timely submitted. The only remaining claims arising out of the first complaint revolved exclusively around Plaintiff's dissatisfaction with his January 10, 1995 performance evaluation, which he alleged had unfairly rated him as performing at a "fully successful" rather than a "superior" level. Plaintiff did not appeal the September 1, 1995 decision.

On November 29, 1995, the Director of the Regional Complaint Center sent Boswell a copy of the Investigative File and informed him in an accompanying cover letter that the file now contains sufficient information to allow the agency to make a decision. A file excerpt submitted by Defendant indicates that the agency had concluded that the 1994 inquest was not an EEO investigation and that Boswell had not previously been involve in the EEO process. Upon the request of the Regional Complaint Center, Boswell thereafter agreed to extend the 180–day investigative period relating to his first administrative complaint until December 31, 1995. Finally, on December 12, 1995, the agency advised Plaintiff that it had completed its investigation and offered him a choice between an immediate final decision or a hearing before an Administrative Judge. Boswell elected to proceed with a formal hearing.

At Boswell's request, the parties engaged in pre-hearing discovery, in the course of which OCC served a set of interrogatories and document requests upon Boswell. In response to OCC's interrogatories, Boswell for the first time raised as additional motives for Byledbal's retaliatory actions that Boswell had (1) opposed "questionable EEO/personnel practices" in a May 2,1994 Administration Division Manager staff meeting and a May 4, 1994 telephone conference call to Washington and (2) participated in three formal EEO proceedings instituted by different co-workers.

In its request for production of documents, OCC sought production of all documents relevant to Boswell's interrogatory responses. Boswell replied that these materials had already been produced to the agency during its investigation of his complaints. Subsequently, however, it became evident that Boswell had maintained expansive personal notes, many of which had never been produced to the agency, apparently at least in part because Boswell considered the documents to he privileged. OCC thereupon brought the parties' emerging discovery dispute to the attention of the Administrative Judge, who rescheduled the hearing date and ordered Plaintiff to make the documents available for *in camera* inspection. Plaintiff complied by producing redacted documents, which were then passed on to OCC. Objecting that the notes had been unilaterally reacted, had not been produced in chronological order, and had been intermingled with large quantities of irrelevant materials, Defendant filed a motion in limine in which it requested that the action be dismissed.

In a September 9, 1996 letter to the Administrative Judge, Boswell's counsel responded to a renewed request that Boswell provide unredacted copies of his notes by reasserting his position that the documents were privileged under relevant agency regulations. Claiming that OCC had abused the EEO process, counsel then notified the Administrative Judge of Boswell's decision to dismiss his administrative proceedings in favor of instituting an action in the district

court. On October 16, 1996, Plaintiff filed his Original Complaint and Jury Demand in this Court.

Defendant now urges the Court to dismiss the instant action on the ground that the Court lacks subject matter jurisdiction over Plaintiff's claims.

## ANALYSIS

Defendant argues that dismissal of all or part of Plaintiff's claims is proper for three reasons: (1) Plaintiff failed to exhaust his administrative remedies by refusing to cooperate with the agency's investigation of his complaints in good faith; (2) Plaintiff failed to timely appeal the agency's dismissal of a portion of his first administrative complaint; and (3) Plaintiff failed to comply with the statutory requirement that he sue the head of the appropriate agency rather than the agency itself. The Court now considers each of Defendant's arguments in turn.

### A. LEGAL STANDARD FOR RULE 12(B)(1) DISMISSAL

An action must be dismissed if it appears that the Court does not possess subject matter jurisdiction over the plaintiff's claims. Fed.R.Civ.P. 12(b)(1), (h)(3). Importantly, the burden of establishing subject matter jurisdiction rests on, the plaintiff as the party invoking jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1991). A district court has the power to decide a Rule 12(b)(1) motion to dismiss "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)).

Where, as here, the motion is based on extrinsic evidence pointing toward the absence of subject matter jurisdiction, the court is entitled to weigh the evidence presented and to make an independent factual determination regarding the existence of jurisdiction. *Williamson* 645 F.2d at 412–13. However, the court should not adjudicate genuine fact disputes if the jurisdictional issue is dependent upon the resolution of fact questions that go to the merits of the plaintiff's claim. *Clark v. Tarrant County, Texas*, 798 F.2d 736, 742 (5th Cir.1986). "[W]hen a defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case." *Daniel v. Ferguson*, 839 F.2d 1124, 1127 (5th Cir.1988); *Tindall v. United States*, 901 F.2d 53, 55 n. 5 (5th Cir.1990).

### B. ASSERTED GROUNDS FOR DISMISSAL

#### 1. *Failure to Exhaust Administrative Remedies*

Defendant contends that Plaintiff's claim is subject to dismissal in its entirely because Plaintiff failed to exhaust his administrative remedies in that he refused to cooperate with the agency's investigation of his complaints in good faith. As Defendant accurately points out, "[a] federal employee must exhaust his administrative remedies against his federal employer before bringing suit under Title VII in federal court." *Francis v. Brown*, 58 F.3d 191, 192 (5th Cir.1995) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). In that regard, the applicable statute provides in relevant part that a federal employee may file a civil action in federal court either (1) within 90 days of receipt of notice of final agency action, or (2) if no final action has been taken, after 180 days have elapsed from the date on which the initial charge was filed with the agency. 42 U.S.C. § 2000e–16(c); *Munoz v. Aldridge*, 894 F.2d 1489, 1492 (5th Cir.1990); *see also Vinieratos v. United States, Dept. of Air Force*, 939 F.2d 762, 769 n. 6 (9th Cir.1991); *Wrenn v. Secretary, Dept. of Veterans Affairs*, 918 F.2d 1073, 1077 (2d Cir.1990), *cert. denied*, 499 U.S. 977, 111 S.Ct. 1625, 113 L.Ed.2d 721 (1991). To this statutory timing requirement, courts have added the further obligation that the

complainant participate in good faith in the administrative process.[1]  *See Francis,* 58 F.3d at 192, *Munoz,* 894 F.2d at 1492; *Greenlaw v. Garrett,* 59 F.3d 994, 997 (9th Cir.1995); *Wrenn,* 918 F.2d at 1078.

■ The exact contours of the "good-faith participation" requirement have yet to be clearly defined. it appears, however, that this standard imposes at least two basic obligations upon complainants: First, the claimant "must cooperate in the administrative investigation of the complaint by making specific charges." *Wrenn,* 918 F.2d at 1078 (citing *Edwards v. Department of the Army,* 708 F.2d 1344, 1347 (8th Cir.1983); *Johnson v. Bergland,* 614 F.2d 415, 417 (5th Cir. 1980)). · Second, the complaining employee must provide all information that is necessary to investigate his claims. *Id.* (citing *Jordan v. United States,* 522 F.2d 1128, 1133 (8th Cir.1975)). Both elements have as their purpose the facilitation of an administrative resolution of the complaint. *Id.*

Defendant maintains that Plaintiff's conduct with regard to his administrative complaints was deficient in both respects. More specifically, Defendant argues that Boswell failed to cooperate with the agency's investigation in that he failed to make the Regional Complaint Center aware of the principal allegations upon which he later relied to establish his prima facie case before the Administrative Judge—namely, that he had participated in EEO proceedings instituted by three other co-workers, and that he had made statements opposing unlawful employment practices during a May 2, 1994 staff meeting and a May 4, 1994 conference call with Washington. In addition, OCC claims that Boswell's lack of good faith is demonstrated by his decision to withhold certain of his personal notes and diaries in response to OCC's requests for production of documents.[2]

■ The Court is not persuaded that the first of these two reasons-i.e., Boswell's failure to disclose the full scope of his *prima facie* case—when considered by itself, reflects such a lack of good faith as to justify dismissal of this action for failure to exhaust administrative remedies. Significantly, the Original Complaint forming the basis of Plaintiff's present federal lawsuit makes no mention either of Plaintiff's participation in the investigation of EEO complaints initiated by co-workers or of his statements on May 2 and May 4, 1994 as alleged grounds for Byledbal's retaliatory conduct. Rather, the pleading, like his administrative charges, asserts only that Plaintiff suffered retaliation due to his alleged participation in the 1994 EEO investigation conducted out of Washington and the filing of his initial EEO complaint against Byledbal.

1. At the outset, the Court observes that, notwithstanding these conditions, Rule 12(b)(1) may not represent the most appropriate vehicle for dismissing a claim on the ground that the plaintiff failed to exhaust administrative remedies. This is so because various courts have noted that administrative exhaustion is not, strictly speaking, a jurisdictional prerequisite but rather a condition precedent to suit which is subject to equitable tolling and waiver. *See Greenlaw,* 59 F.3d at 997 n. 8; *Vinieratos,* 939 F.2d at 768 n. 5; *Waiters v. Parsons,* 729 F.2d 233, 236 (3d Cir.1984); *see also Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 94–96, 111 S.Ct. 453, 456–58, 112 L.Ed.2d 435 (1990) (holding that the provisions of 42 U.S.C. § 2000e–16(c) are subject to equitable tolling); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (establishing that the filing of an EEOC claim is not a jurisdictional prerequisite). Some of these courts, however, have nonetheless upheld dismissals by lower courts on jurisdictional grounds. *See Vinieratos,* 939 F.2d at 773. Moreover, at least one circuit

has indicated that exhaustion of remedies does constitute a jurisdictional bar to Title VII actions. *See e.g., Johnson v. Orr,* 747 F.2d 1352, 1356 (10th Cir.1984). *But see Million v. Frank,* 47 F.3d 385, 389 (10th Cir.1995) (holding that compliance with the filing requirements of Title VII is not a jurisdictional requirement). Given this lack of consistency, the Court finds that it is not precluded from addressing the issue in the context of a Rule 12(b)(1) motion.

2. Defendant also appears to hint that dismissal is appropriate because the Washington EEO investigation mentioned in Plaintiff's first administrative complaint was not in fact an EEO proceeding. The Court need not resolve this issue in the present context. Whether or not the investigation should be characterized as an EEO matter is a fact issue that goes to the merits of Plaintiff's claims and hence is more properly treated as the basis of a summary judgment motion. *See Daniel,* 839 F.2d at 1127; *Clark v. Tarrant County,* 798 F.2d 736, 741–42 (5th Cir.1986).

Even if Plaintiff sought to rely on other instances of personal involvement in protected activities, however, the Court finds that his failure to mention each of these events does not necessarily demonstrate bad faith or, for that matter, contravene the purposes of the good-faith participation rule. The relevant EEOC regulations require only that the administrative complaint contain a statement that describes generally the actions or practices that form the basis of the complaint. *Matos v. Hove,* 940 F.Supp. 67, 71 (S.D.N.Y.1996); 29 C.F.R. § 1614.106(c) (1997). Boswell's initial complaint made it clear that he claimed to have suffered retaliation due to his participation in EEO proceedings and described in detail the retaliatory actions taken. Given these allegations, the extent of Boswell's involvement in protected activities likely fell within the general parameters of the investigation that was, or should have been, conducted by the Regional Complaint Center.

In that respect, the instant matter is distinguishable from actions in which the plaintiff's federal claims were found to be precluded by the fact that the plaintiff had not cooperated in good faith with an agency investigation. This is not a case, for example, of an agency dismissing the complainant's claims after the latter had proven to be unwilling or unable to provide the agency with requested information regarding the nature of his claims or the factual details of the alleged discriminatory actions, thereby rendering an appropriate investigation impossible. *See, e.g. Johnson v. Bergland,* 614 F.2d 415 (5th Cir.1980) (upholding the agency's decision to dismiss the plaintiff's complaint for vagueness because the plaintiff failed to give specific details and dates, preventing the agency from determining whether the plaintiff had timely pursued his complaint); *Pack v. Marsh,* 986 F.2d 1155 (7th Cir.1993) (holding that the agency had properly canceled

the plaintiffs' charges when the plaintiffs refused the agency's request to provide it with detailed information regarding specific acts of discrimination); *Wade v. Secretary of the Army,* 796 F.2d 1369, 1376 (11th Cir.1986) (same); *Edwards v. Department of the Army,* 708 F.2d 1344 (8th Cir.1983) (same); *Woodard v. Lehman,* 717 F.2d 909 (4th Cir. 1983) (same). Nor is this a situation in which the complainant wilfully failed to appear for a hearing or other proceeding, *see Maher v. United States Postal Serv.,* 729 F.Supp. 1444, 1451 (S.D.N.Y.1990) (finding that such conduct could entitle the agency to cancel the complaint), or abandoned the EEO proceedings during the 180 day investigative period. *see Vinieratos,* 939 F.2d at 769 (ruling that abandonment to pursue other avenues of relief constitutes a failure to exhaust administrative remedies). Indeed, the record contains no evidence that either the Regional Complaint Center or the Administrative Judge ever advised Boswell that he had submitted insufficient information to allow full investigation of his claims or insisted that he elaborate upon his allegations in greater detail.[3]

■ Nevertheless, the Court is of the opinion that Boswell did fail to exhaust his administrative remedies when, after having elected to proceed with an administrative hearing, he abruptly and unilaterally terminated the hearing process, apparently for the specific purpose of extricating himself from a looming discovery dispute and the possibility of incurring sanctions for his failure to comply with the orders of the Administrative Judge. Defendant submits that Boswell's repeated refusal to produce documents on the ground that all relevant materials had already been provided to the Regional Complaint Center, combined with his subsequent failure to produce his personal notes and diaries despite his admission that these notes contained relevant information, plainly

**3.** Nor does it appear that the Administrative judge believed that the allegations made by Boswell in connection with the hearing process went significantly beyond those forming the basis for his earlier administrative complaints. Pursuant to 29 C.F.R. § 1614.109(a), "[w]here the administrative judge determines that the complainant is raising or intends to pursue issues like or related to those raised in the complaint, but

which the agency has not had an opportunity to address, the administrative judge shall remand any such issues for counseling ..." As no such determination was apparently ever made by the Administrative Judge in the present case, the Court presumes that the Judge did not consider Boswell's contentions at the hearing stage to exceed the scope of his administrative complaints.

evinces his unwillingness to participate in good faith in the administrative proceedings. Indeed, Defendant points out that Boswell defied even the order of the Administrative Judge to supply the notes for *in camera* inspection by producing only a set of previously redacted notes. And, Defendant observes, once the issue was again raised in the context of Defendant's motion in limine, Boswell simply abandoned the hearing process altogether.

While Boswell neglects to present the Court with a coherent explanation for his non-compliance with Defendant's discovery requests and the Administrative Judge's instructions, the record does indicate that he may have operated under the belief that the documents were privileged under applicable agency rules. The Court need not, however, decide whether Boswell's uncooperative conduct during discovery by itself demonstrates a sufficient lack of good faith to warrant dismissal of his present action Instead the Court finds that Plaintiff failed to exhaust his administrative remedies when he made the unilateral decision to terminate the administrative proceedings before a decision on either his discovery obligations or the merits of his complaint could be reached. Had Boswell allowed the Administrative Judge to adjudicate the parties' discovery dispute, the issue would have come to a proper resolution at the time it was raised. By contrast, Plaintiff's sudden and entirely unfounded abandonment of the hearing process in order to avoid the potentially negative consequences of an unfavorable ruling on the discovery issue evidences an unwillingness to participate in good faith in the administrative process

The Fifth Circuit has held that "section 2000e–16 clearly provides a right to bring suit after 180 days." *Munoz*, 894 F.2d at 1492. Accordingly, it is generally true that a plaintiff has the option of terminating the administrative process in order to institute a lawsuit in federal district court once the mandatory 180 day investigative period has elapsed and a final agency decision has not been issued *See Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir.1984). In this case, however, Plaintiff was offered a choice between immediate issuance of a final agency ruling (which would have entitled him to file Suit in federal court) on the one hand and initiation of an administrative hearing process on the other. Plaintiff chose the latter. once he exercised his option to temporarily forego a lawsuit in favor of an administrative hearing, Plaintiff was bound by his choice to continue to participate in good faith in the administrative proceeding until a resolution could be reached.

Since Boswell voluntarily and purposely declined to receive a final agency determination in order to avail himself of an administrative hearing, the Fifth Circuit's holding in *Munoz* (which permits plaintiffs to abandon pending administrative proceedings if their case has languished in the administrative phase for more than 180 days without significant activity) does not control the case at bar. Indeed, the *Munoz* court itself recognized that "notwithstanding the passage of 180 days, plaintiffs who resort to the administrative process but do not cooperate in the proceedings can thereby fail to exhaust their administrative remedies." *Munoz*, 894 F.2d at 1493 (citing *Johnson*, 614 F.2d at 418). That rule clearly applies to the situation now before the Court. Boswell expressly resorted to the hearing process, having rejected the Agency's offer of a final ruling. Nevertheless, he refused to cooperate in the proceedings he himself had initiated by abandoning his complaint as soon as he no longer found the process to be advantageous. In contrast to *Munoz*, there is no evidence in this matter of any significant delay-other than that occasioned by Plaintiff's reluctance to produce relevant documents—or of a substantial period of inactivity; to the contrary, it appears that the Administrative Judge was fully prepared to proceed with the scheduled hearing on September 9, 1996.

Courts have repeatedly held that a complainant should not be entitled to abandon an administrative procedure, once initiated in order to file suit in federal court. *See Vinieratos*, 939 F.2d at 771 (quoting *McGinty v. United States Dep't of the Army*, 900 F.2d 1114, 1117 (7th Cir.1990)). As the Ninth Circuit has aptly observed, "an administrative exhaustion rule is meaningless if claimants may. impede and abandon the adminis-

trative process and yet still be heard in the federal courts." *Id.* at 772. Consequently, the Court concludes that it cannot condone Plaintiff's evident manipulation of the optional procedural vehicles afforded him for the purpose of resolving his complaint by allowing him to now pursue his claims in federal court. Plaintiff's action, therefore, should be dismissed on the ground that Plaintiff failed to exhaust his administrative remedies.

### 2. *Failure to Timely Appeal Final Agency Order*

Dismissal of at least a portion of Plaintiff's Complaint, moreover, would also be appropriate for a second reason. On September 1, 1995, the Director of the Regional Complaint Center forwarded a letter to Boswell informing him that the agency was dismissing nine of the eleven claims raised by Boswell in his first administrative complaint because they had not been asserted in a timely manner. Boswell was advised that this dismissal constituted a final agency decision as to those portions of his complaint.

Under 42 U.S.C. § 2000e–16(c), Boswell was required to institute a civil action within 90 days from his receipt of this final agency determination. His present Complaint, however, was not filed until October 16, 1996. The Court hence agrees with Defendant that, because Boswell failed to appeal the agency's decision within the time period prescribed by statute, he is now barred by limitations from reasserting these claims in the instant forum. *See Watkins v. Lujan,* 922 F.2d 261 (5th Cir.1991); *Bell v. Veterans Admin. Hosp.,* 826 F.2d 357 (5th Cir.1987).

The Court notes that Plaintiff has apparently conceded the issue since he has made no effort to address it in his response to Defendant's motion to dismiss. Finding no evidence in the record that would indicate that the limitations period should have been equitably tolled, the Court determines that any claims asserted by Plaintiff which were raised in his first administrative complaint-other than those involving Plaintiff's January 10, 1995 performance evaluation—must also be dismissed on limitations grounds.

### 3. *Failure to Sue Proper Party*

Finally, Defendant reasons that Boswell's suit must be dismissed because Boswell has failed to comply with the requirement of 42 U.S.C. § 2000e–16(c) that any civil action instituted by him be brought against "the head of the department, agency, or unit, as appropriate." *See Vinieratos,* 939 F.2d at 772. Because the proper party defendant has not been named, Boswell's complaint is indeed subject to dismissal. *Bell,* 826 F.2d at 360. Although the Court normally would afford Plaintiff an opportunity to correct the error by amending his complaint and serving the appropriate party, such an amendment would be futile in the present case because, as discussed in the foregoing, all of Plaintiffs claims must be dismissed on other grounds as well.

### CONCLUSION

Upon careful review of the parties' arguments and evidence, in light of applicable law, the Court ORDERS that Defendant's motion to dismiss should be, and same hereby is, GRANTED.

**So Ordered.**